# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PRESTIGE CAPITAL CORPORATION,<br><br>    Plaintiff,<br>v.<br><br>COLT'S MANUFACTURING COMPANY, LLC,<br><br>    Defendant. | Civil Action No.<br>3:17-CV-01082 (CSH)<br><br>SEPTEMBER 7, 2018 |

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**HAIGHT, Senior District Judge:**

Plaintiff Prestige Capital Corporation brings this action against Defendant Colt's Manufacturing Company, LLC, which allegedly owes $500,001.35 to Plaintiff. Plaintiff provides accounts receivable financing, also known as factoring, to companies who are in need of immediate cash flow. A third party company sold and assigned the Defendant's accounts receivable to Plaintiff.

Plaintiff has moved for partial summary judgment on its breach of contract claim, pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Ruling resolves the motion.

## I. STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must "demonstrate the absence of any material factual issue genuinely in dispute" to be entitled to summary judgment. *Am. Int'l Grp., Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981)

(citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)) (internal quotation marks omitted). All inferences and ambiguities must be viewed in the light most favorable to the nonmoving party. *Rogoz v. City of Hartford*, 796 F.3d 236, 245–46 (2d Cir. 2015).

"In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by [Rule 56], the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). The non-moving party cannot "defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Id.* (citations omitted). In other words, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party "must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x 102, 103 (2d Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks and citation omitted); *see also Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

## II. FACTUAL BACKGROUND

The following undisputed or indisputable facts are derived from the parties' submissions pursuant to Local Rule 56(a) and the affidavits and exhibits attached to the parties' submissions. All reasonable inferences have been drawn in Defendant's favor.

Plaintiff Prestige, a commercial finance company, provides accounts receivable financing for other companies. Doc. 29-2 ("Pl. 56(a) Stmt.") ¶ 1. A company called Chazkat, LLC, doing business as Bold Ideas, entered into a Purchase and Sale Agreement ("PSA") with Plaintiff on or about September 17, 2014, causing the sale of certain accounts receivable to Plaintiff. *Id.* ¶¶ 2–3. This practice is called factoring and enables companies to have access to immediate cash flow. Doc. 1 ("Compl.") ¶ 9. Bold Ideas sold rifles and rifle subassemblies to Defendant Colt. Those purchases are governed by a Manufacturing and Sales Agreement ("MSA") that was signed in November 2015. Pl. 56 (a) Stmt. ¶ 5. Beginning on August 5, 2016, the PSA included accounts due and owing from the Defendant, meaning that, although Defendant would normally pay Bold Ideas under the MSA terms, the PSA's factoring arrangement directed Defendant to pay Plaintiff any amounts it owed and would owe to Bold Ideas. *Id.* ¶¶ 4–6.

For several months until March 2017, Bold Ideas remitted invoices to Defendant, and Defendant made payments on those invoices in the amount of $6,000,292.89 to Plaintiff. *Id.* ¶¶ 8–9. However, Defendant notified Plaintiff on March 16, 2017, that it would "not be making any payments on [the Bold Ideas] account." Doc. 29-7. Defendant indicated they stopped payments because "[Bold Ideas] is significantly past due on the reduction of their obligations/payments due to [Defendant]." *Id.*

Plaintiff, through its counsel, demanded that Defendant pay the alleged outstanding balance

of $1,173,750.71 on March 23, 2017. Pl. 56(a) Stmt. ¶ 12. Defendant then made two payments to Plaintiff: $303,812.88 on March 31, 2017, and $299,641.16 on April 7, 2017. *Id.* ¶ 13. Parties dispute the amount of the remaining balance that is owed to Plaintiff. Plaintiff calculates that Defendant still owes $500,001.35, *id.* ¶ 15, whereas Defendant denies it owes Plaintiff any further sum. Doc. 38-3 ("Def. 56(a) Stmt.") ¶ 15.

Plaintiff based its calculation on the two aforementioned payments in 2017 and a provision in the MSA limiting Defendant's setoff amount. Pl. 56(a) Stmt. ¶ 11. The relevant part (the "10% Provision") in Section 2(a) of the MSA states:

> COLT and BOLD IDEAS acknowledge and agree that COLT, beginning April 1, 2016, shall have the right of setoff for any amounts due COLT whatsoever against any amounts COLT is obligated to pay under this Agreement. Specifically, COLT shall have the right to setoff up to ten percent (10%) of any invoice with respect to any amounts due from BOLD IDEAS to COLT, including royalty payments BOLD IDEAS owes to COLT under the License Agreement dated as of April 29, 2013, any warranty or service work for rifles manufactured under this Agreement, or any other agreement with COLT or any other charge owed or allegedly owed by BOLD IDEAS to COLT.

Doc. 29-5 at 3.

On the other hand, Defendant's calculations are based upon an expected tax obligation to the government and an addendum to the MSA. Doc. 38-3 at 6–8 ("Def. Addt'l Facts") ¶ 5. The addendum (the "Addendum"), signed November 12, 2015, reads as follows:

> COLT has agreed to supply BOLD IDEAS with key parts and components to support production of the first 1,000 Rifles by BOLD IDEAS under the Agreement. COLT will invoice BOLD IDEAS for these parts and components at its standard costs, as well as freight charges and related fees and costs. BOLD IDEAS agrees to apply the full amount of said invoice as a credit against the first invoice, and successive invoices if the amount of the initial invoice is insufficient, rendered from BOLD IDEAS to COLT under the Agreement. The parties contemplate that there will be additional parts purchases from COLT to BOLD IDEAS to be incorporated in Rifles produced under this Agreement, and agree that these purchases will be invoiced and

credited in like manner, and that each will be supported by a separate letter agreement.

*Id.* at 17.

### III. DISCUSSION

Pending before the Court is a motion for partial summary judgment by Plaintiff on its breach of contract claim. Plaintiff is seeking to enforce the MSA, alleging that Defendant breached its contractual obligations by failing to pay the Plaintiff the balance owed under the MSA. Compl. ¶ 27–31.

**A.   Issues of Material Fact**

Plaintiff asserts that this is a simple breach of contract action with no genuine issues of material fact in dispute. The Court disagrees. Because there is a material dispute concerning the precise amount owed to Plaintiff, the Court cannot grant summary judgment on this issue. The contract language appears to be ambiguous, allowing for the possibility that Defendant does not owe any sum to Plaintiff. Consequently, if no money is owed, then there is no breach of contract.

"Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000); *see also Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) ("In a contract dispute a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning."). "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Campagnie Fianciere de CIC*

*et de L'Union Europeenne*, 232 F.3d at 158 (citation and internal quotation marks omitted). "Ascertaining whether or not a writing is ambiguous is a question of law for the trial court." *Sayers*, 7 F.3d at 1094 (citations omitted). If contractual language is ambiguous, then (and only then) extrinsic evidence of the parties' intent becomes admissible. *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992); *see also Sayers*, 7 F.3d at 1095 ("But, if ambiguity exists, then extrinsic evidence of the parties' intent may be looked to as an aid to construing the contractual language.").

At heart of the parties' dispute is the 10% Provision and the Addendum. Plaintiff contends that the 10% Provision limits the amount that Defendant is entitled to setoff. Doc. 29-1 at 5. Moreover, it argues that any parts supplied by the Defendant to Bold Ideas for the first 1,000 rifles were already paid for and credited in full, and, in any case, the 10% Provision also applies to any rifles beyond the first 1,000 mentioned in the Addendum. Doc. 39 at 3. Defendant disagrees, arguing that Plaintiff cannot consider Federal Excise Taxes ("FETs")—taxes owed to the U.S. government from funds already remitted by Defendant—as a setoff subject to the 10% Provision. Doc. 38-1 at 7. Plaintiff's failure to pay FETs supposedly places Defendant "at risk of substantial liability to the [f]ederal government" as well. *Id.* Defendant also contends that Bold Ideas never paid the full amount due from the arrangement as specified in the Addendum and that this amount of $273,459 is not subject to the 10% Provision either. *Id.* at 8.

The Court declines to decide at this moment whose interpretation of the contract provisions at issue is correct, but it does conclude as a matter of law that the contract language is ambiguous.

First, the 10% Provision only went into effect on April 1, 2016. Doc. 29-5 at 3. The Addendum was signed on November 12, 2015, *id.* at 17, meaning there was a period of almost five

months to which the 10% Provision did not apply. It is unclear to the Court what setoff percentage, if any, applies to the five-month period and how the Plaintiff accounted for this period when determining the remainder owed to it. Neither the MSA nor the Addendum includes language about what to do for this period of time.

Second, that the Addendum refers to potential "*additional* parts purchases," id. (emphasis added), also suggests that the Court must look to extrinsic evidence in construing the parties' intentions regarding account balancing for at least this five-month period. Plaintiff argues that any parts after those for the first 1,000 rifles required separate letter agreements. Doc. 39 at 3–4. However, the Court does not agree with Plaintiff's conclusion that lack of letter agreements means that the 10% Provision applied to these subsequent purchases. *See id.* at 4. Again, had Defendant made these purchases prior to April 1, 2016, the MSA is silent as to what percent setoff applies.

Third, the parties disagree as to whether Plaintiff properly applied any amounts governed by the Addendum to the outstanding balance. Defendant believes that it is still owed $273,459 for these component parts, [Def. Addt'l Facts ¶ 9], whereas Plaintiff believes "any parts supplied by [Defendant] to Bold Ideas for the first 1,000 rifles under the Addendum were paid for and credited, in full, many months ago," [Doc. 39 at 3]. Consequently, there seems to be at least two disputes over facts material to Plaintiff's breach of contract claim: (1) how much should be credited for parts purchased under the Addendum and any subsequent agreements, and (2) if Plaintiff applied the credits at all when determining the balance owed.

It is thus plausible that Defendant's full setoff amount of $273,459 should be applied, decreasing the amount owed to Plaintiff to $226,542.35. This is a considerable sum, for which lack of payment would still constitute breach of contract, and so the Court turns to Defendant's assertions

that "many of the underlying invoices rendered by Bold Ideas to [Defendant], and on which [Plaintiff] now seeks payment, specifically identify an amount due to the [f]ederal government for FET," [Doc. 38-1 at 7], and "FET amounts, which are an obligation due to the [f]ederal government," were never intended to be included under the 10% Provision, [Def. Addt'l Facts ¶ 5]. The Defendant expects this amount to be in excess of $806,575. *Id.* ¶ 6. Plaintiff counters that Defendant's discussion regarding FET obligations is immaterial to its breach of contract claim. Doc. 39 at 2. It is unclear whether Plaintiff's calculations considered FET amounts at all, but how the FET amounts should have been included—in whole, in part, or not at all, the Court is unsure at this stage—also points to the ambiguity apparent in the 10% Provision. The 10% Provision applies to "any amounts due from BOLD IDEAS to [Defendant]," [Doc. 29-5 at 3], but as Plaintiff admits, the FETs are due to the U.S. government, not Defendant, [Doc. 39 at 2]. Plaintiff also has not challenged Defendant's assertion that Plaintiff's failure to pay FETs constitutes a breach of contract and subjects Defendant to "substantial liability to the [f]ederal government."[1] Doc. 38-1 at 7. Thus, proper consideration of FETs owed to the government could either zero out Defendant's financial obligations to Plaintiff and mean that no breach of contract has occurred, or, at the very least, provide a plausible defense for lack of payment.[2]

---

[1] Plaintiff correctly points out that Defendant "tellingly does not offer any evidence that the U.S. [g]overnment seeks to collect this sum from [Defendant] because it knows that this is Bold Ideas' tax obligation." Doc. 39 at 2. However, the government seeks this sum from no one at the moment likely because the audit is ongoing. *See* Def. Addt'l Facts ¶ 6. Viewed in light most favorable to the nonmoving party, the Court must infer that the government will go after someone, perhaps Defendant, should its audit determine that FETs are owed. The MSA indicates that Bold Ideas is responsible for the FETs, [Doc 29-5 at 3], but it is unclear why the government would have knowledge of this tax arrangement.

[2] Defendant also asserts that it has off-setting defenses under section 42a-9-404 of the Connecticut General Statutes. Doc. 38-1 at 9–11. The Court finds no need to address this

Defendant has raised sufficient doubt as to the accuracy of both (1) the actual amount still owed to Plaintiff and (2) Plaintiff's interpretation of the contract. Resolution of the first of these two questions will depend principally upon how one resolves the second question, which in turn involves ambiguous language in the contract. Accordingly, summary judgment would be inappropriate at this stage because of material disputes concerning contract ambiguities. Specifically, the meaning of the 10% Provision and its application to the MSA are ambiguous, and so the Court cannot resolve this issue without extrinsic evidence that has yet to be uncovered in discovery.

**B.      Rule 56(d) of the Federal Rules of Civil Procedure**

Defendant has also asserted the need for additional discovery as a reason to deny or refrain from deciding on Plaintiff's motion for summary judgment in accordance with Rule 56(d) of the Federal Rules of Civil Procedure. To successfully use Rule 56(d), the Defendant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

Rule 56(d) requires "an affidavit that includes the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.*, 621 F. App'x 70, 73 (2d Cir. 2015) (citation and internal quotation marks omitted). However, "bare, generalized assertions cannot justify delaying the resolution of a summary judgment motion." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151–52 (2d Cir. 2016). Instead, the nonmoving party must explain with specificity how discovery will be reasonably expected to create a genuine issue of material fact. *Id.* at 151.

---

argument here as it has found that material facts are in dispute.

The Court stayed discovery in this case to resolve the instant motion for summary judgment and so recognizes the parties' limited ability to conduct discovery thus far. *See* Doc. 37. Plaintiff, with some merit, points out that Defendant's supporting affidavit in opposition of this motion is quite bare regarding the exact discovery that Defendant seeks. Doc. 39 at 6. The Court disagrees with Plaintiff, however, that Defendant has failed to show how discovery might create genuine issues of material fact or why efforts to obtain discovery were unsuccessful. *See id.* As explained *supra*, the MSA and the Addendum are ambiguous, and further evidence is needed to determine (1) the proper contract interpretation and (2) Defendant's financial obligations, if any, to Plaintiff. While the affidavit does not explicitly outline this need, Defendant's memorandum to which the affidavit serves as an exhibit does so. *See*, *e.g.*, Doc. 38-1 at 8 (noting further discovery is needed on "(1) the extent to which Bold Ideas informed [Plaintiff] of its obligations to [Defendant] with respect to costs for key parts and components . . . ."). As for explaining Defendant's efforts to obtain discovery and why these efforts were unsuccessful, the affidavit is quite clear: Defendant "has not been able to obtain that information to date because discovery in this case just commenced, and because [Plaintiff] has so far treated all such information as irrelevant and immaterial." Doc. 38-2 at 4. While Defendant's affidavit could have been clearer to meet the Rule 56(d) standard, the Court finds that Defendant has shown the need for additional discovery, especially in light of this early stage of litigation, stayed discovery, and the Court's conclusion that genuine disputes of material fact remain.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, [Doc. 29], on its Count I breach of contract claim is DENIED. Because the Court has resolved this motion, the stay on discovery is LIFTED. The parties are directed to follow the updated scheduling order issued

contemporaneously on the docket with this Ruling. The updated scheduling order will afford no less than seven days for service of written discovery and will provide for adequate opportunity for response, as granted by the Court's order, [Doc. 37], on Plaintiff's Conditional Motion for Leave to Serve Written Discovery, [Doc. 36]. In addition, Defendant is reminded of the Court's previous order, [Doc. 46], granting Defendant's motion for extension of time to file for entry of default judgment against Third Party Defendant, Chazkat, LLC, [Doc. 45], no later than 120 days after this Ruling. Defendant is thus directed to file any motion for default judgment against Third Party Defendant by January 7, 2019.

    It is SO ORDERED.

    Dated: New Haven, Connecticut
          September 7, 2018

                                      */s/ Charles S. Haight, Jr.*
                                      CHARLES S. HAIGHT, JR.
                                      Senior United States District Judge